Robur **OTERO CARRASQUILLO,** María T. Negrón Cedeño, and Jennifer M. Otero Negrón, Plaintiffs,

v.

**PHARMACIA, et al., Defendants.**

**No. CIV 03–1651JAF.**

United States District Court, D. Puerto Rico.

Aug. 15, 2005.

302

Vilma M. Dapena–Rodriguez, Bayamon, PR, for Plaintiffs.

Carl E. Schuster, Lourdes C. Hernandez–Venegas, Maria L. Santiago–Ramos, Schuster Usera & Aguilo LLP, San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs, Robur Otero Carrasquillo, María T. Negrón Cedeño, their conjugal partnership, and their daughter, Jennifer Marie Otero Negrón, bring the present action against Defendants, Pharmacia (incorrectly identified both as Pharmacia Corporation and Pfizer Pharmaceuticals) ("Pharmacia"); Zaida Sanabria in her official and personal capacities; Companies X, Y and Z; and Jane Doe and John Doe, alleging violations of the Employee Retire-

ment Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. (1999 & Supp.2005) and Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 (1991 & Supp. 2001). *Docket Document No. 1.*

On January 1, 2005, Defendants Pharmacia and Sanabria moved for summary judgment. *Docket Document No. 28.* Plaintiffs opposed the motion on February 25. *Docket Document No. 37.* Defendants filed a reply to Plaintiffs' opposition, *Docket Document No. 67,* and Plaintiffs filed a surreply. *Docket Document No. 81.*

## I.

### *Relevant Factual and Procedural History*

■ Unless otherwise indicated, we derive the following factual summary from the complaint and the statements of fact submitted by the parties in their summary judgment and opposition motions. *Docket Document Nos. 1, 28, 38, 66, 82, 92.*[1]

Plaintiff Robur Otero Carrasquillo ("Plaintiff") is a resident of Bayamón, Puerto Rico. Plaintiff began working for Defendant Pharmacia on June 4, 1973, and was employed as a Research Associate at Defendant Pharmacia's Arecibo plant from the late 1980's until the end of his employment in November 2001.

Plaintiff María Teresa Negrón Cedeño, Plaintiff's wife, is a resident of Bayamón, Puerto Rico.

Plaintiff Jennifer Marie Otero Negrón is a resident of Bayamón, Puerto Rico, and is the daughter of Plaintiff and Plaintiff Negrón.

Defendant Pharmacia is a corporation organized and existing under the laws of the State of Delaware.

Defendants X, Y, and Z are unnamed entities, administrators, plan sponsors, and fiduciaries that participated in the alleged misconduct and/or issued insurance policies that cover the damages claims in the present lawsuit.

Defendant Zaida Sanabria was Plaintiff's direct supervisor at Pharmacia in the Fermentation Plant during the final seven months of Plaintiff's employment.

Defendants Jane Doe and John Doe include unnamed medical personnel, independent contractors, and employees who directly or indirectly contributed, participated, and/or assisted in the alleged actions. In February 2000, Defendant Pharmacia announced the closing of the fermentation plant in Arecibo, Puerto Rico. Defendant Pharmacia always maintained a Separation Plan Package ("SPP") for its employees. The plan supplemented unemployment benefits for employees who lost their jobs due to job elimination, job restructuring, or non-performance. During a meeting for fermentation employees in September 2000, Linda Díaz, Senior Director of Human Resources for Defendant Pharmacia in Puerto Rico, informed the affected employees that they had two options: (1) apply for the SPP between April 19, 2000 and December 31, 2001; or (2) continue with the company in a different position.

In February 2001, all fermentation plant employees received a Spanish translation of the summary plan description of the SPP ("SPD"), which outlined in layman's terms the general contours of the SPP. According to the SPD, fermentation plant employees would be granted SPP benefits if they did not receive a "comparable" position within the company.

---

**1.** We disregard the parties' Spanish-language exhibits. *Estades–Negroni v. Assoc. Corp. of N. Am.,* 359 F.3d 1, 2 (1st Cir.2004) (holding that non-English materials submitted for review may not be considered during the pretrial process or become part of the record).

Plaintiff sought a comparable position with Defendant Pharmacia rather than the SPP benefits. Plaintiff consulted several individuals within the company, but never received a clear answer as to what kind of job he would receive or when the position would become available.

During the following months, Plaintiff was upset by a number of events within the plant. The company denied Plaintiff's request to attend a seminar in St. Louis, Missouri. His new supervisor, Defendant Sanabria, was more critical than previous supervisors of his work product and made frequent comments that Plaintiff perceived as unprofessional, derogatory or dismissive. Plaintiff also witnessed his fermentation plant co-workers receiving their new assignments long before he received his new assignment.

On August 27, 2001, Plaintiff received a designation letter indicating that effective January 2, 2002, he would be assigned to the Quality Control Microbiology Laboratories as a Microbiologist III. He was instructed that due to business needs and the closing of the Fermentation Area, he was to continue in his then-current position until the end of December 2001.

Because Plaintiff perceived the new position as a demotion, on November 5, 2001, Plaintiff handed a letter—dated October 31, 2001—to Defendant Sanabria indicating that "after months of extensive evaluation, financial planning, and also due to personal reasons" and in light of "[m]any unpredictable situations," he had decided to change his "original decision regarding [his] future with Pharmacia" and accept the SPP. *Docket Document No. 28, Exh. 22.*

Prior to receiving Plaintiff's letter, neither Díaz nor Defendant Sanabria were aware of Plaintiff's intention to accept the SPP. Díaz immediately contacted Julie Uebler, who was Díaz' SPP contact at Defendant Pharmacia's Corporate offices. Uebler said that since Plaintiff had already been assigned a comparable position, he was no longer SPP-eligible. Díaz conveyed this message to Defendant Sanabria, who conveyed it to Plaintiff on November 12, 2001.

Plaintiff then prepared another letter directed to Carmen Calcaño, Human Resources Manager, further inquiring about his SPP eligibility and questioning Uebler's decision. As he delivered the letter to Calcaño's assistant on November 12, 2001, he collapsed. After regaining consciousness, he spoke with Calcaño for approximately two hours in her office regarding his future with the company. He returned to work the next day, November 13, 2001, but it was Plaintiff's last day of active employment with Defendant Pharmacia. Subsequently, he was admitted to the hospital for a back operation, and was hospitalized for several weeks.

From December 2001 until May 2002, Plaintiff received salary continuation benefits pursuant to Defendant Pharmacia's short-term disability ("STD") plan, whereby he received 100% of his annual salary. As of June 2002, Plaintiff began receiving long-term disability ("LTD") benefits, which amounted to 60% of his annual salary.

On June 8, 2003, Plaintiffs filed the present complaint. *Docket Document No. 1.* Defendant Pharmacia filed a summary judgment motion on January 19, 2005, arguing that their handling of the SPP with regard to Plaintiff did not violate ERISA, that the Commonwealth claims of breach of fiduciary duty, fraudulent inducement, and negligent/intentional infliction of emotional distress are preempted by ERISA, and, finally, that the invasion of privacy claim should be dismissed. *Docket Docu-*

*ment No. 28.*[2]

## II.

### *Motion for Summary Judgment Standard under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. United States Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact, though the burden "may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of production that shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. *See id.* at 331.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella,* 368 F.3d 11, 17 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)).

## III.

### *Analysis*

Defendant Pharmacia first argues that it complied with ERISA's standards, meriting dismissal of Plaintiff's ERISA claims. Defendant then argues that ERISA preempts the Commonwealth law causes of action. As to the federal claims, with one small exception, we agree that Defendant Pharmacia did not violate ERISA. With one further exception, we also agree that Plaintiff's Commonwealth law claims are preempted by ERISA.

### A. *ERISA Claims*

■ "ERISA is a 'comprehensive and reticulated statute,' which Congress adopted after careful study of private retirement pension plans." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 510, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). Con-

---

**2.** Sorting the facts of this case was a taxing affair. Local Rule 7.1(e) provides, "[N]o memorandum of law in support of or in opposition to ... a motion for summary judgment ... shall not [sic] exceed twenty-five (25) pages." P.R. LOCAL R. 7.1(e). We granted the parties leave to file motions in excess of the page limit, but both parties abused our generosity by submitting 70 and 114–page "statements of fact" along with repetitive, overlong motions and memoranda of law with snide, baiting, and irrelevant commentary. *See, e.g., Docket Document Nos. 38, 66.* Each submission could have been shorter through even routine editing and the omission of trivial arguments. In particular, Defendant Pharmacia's motion could have been shorter through the omission of condescending, insulting, and generally inappropriate language.

gress' intent was to ensure that if a worker had been promised a defined pension benefit upon retirement and had fulfilled the conditions required to obtain a vested benefit, the worker would actually receive it. *Nachman,* 446 U.S. at 375, 100 S.Ct. 1723. ERISA controls the administration of benefit plans, *see* 29 U.S.C. § 1001(b), by imposing reporting and disclosure mandates, *see* 29 U.S.C. §§ 1021–1031, participation and vesting requirements, *see* 29 U.S.C. §§ 1051–1061, funding standards, *see* 29 U.S.C. §§ 1081–1086, and fiduciary responsibilities for plan administrators, *see* 29 U.S.C. §§ 1101–1114. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 651, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Section 1332(a)(1)(B) establishes a cause of action for plan participants and beneficiaries, allowing for the recovery of benefits due under the terms of the plan, the enforcement of rights under the terms of the plan, or the clarification of rights to future benefits under the plan. *See* 29 U.S.C. § 1332(a)(1)(B).

### 1. *ERISA's Standard of Review for Denial of Benefits*

■ The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan, the denial of benefits is reviewed under an "arbitrary and capricious" standard. *See Wright v. R.R. Donnelley & Sons Co. Group,* 402 F.3d 67, 74 (1st Cir.2005); *Fenton v. John Hancock Mutual Life Ins.*

*Co.,* 400 F.3d 83, 90–91 (1st Cir.2005); *Matias–Correa v. Pfizer, Inc.,* 345 F.3d, 7, 11 (1st Cir.2003).

■ The arbitrary and capricious standard is "functionally equivalent to the abuse of discretion standard." *Wright,* 402 F.3d at 74 n. 3. Accordingly, "a fiduciary's interpretation of a plan will not be disturbed if reasonable." *Terry v. Bayer Corp.,* 145 F.3d 28, 40 (1st Cir.1998).

### 2. *ERISA Claim for Denial of SPP Benefits*

■ When formulating the standard of review we must determine whether the SPP expressly granted discretionary authority to the plan administrator. *See Terry,* 145 F.3d at 36. The SPP states in pertinent part:

> Section 8.03 *Discretion.* The Company or its delegate will determine, in its or their sole discretion the eligibility of each terminated Employee to participate in the Plan, the amount of Benefits to which a terminated Employee is entitled, and the manner and time of payment of the Benefits . . . . Any decisions, actions or interpretations to be made under the Plan by P & U or the Company, or the Administrative Committee acting on behalf of the Company, shall be made in its respective sole discretion, not in any fiduciary capacity and need not be uniformly applied to similarly situated individuals and shall be final, binding and conclusive upon the parties.

*Docket Document No. 28, Exh. 10.* The terms of the SPP clearly grant discretionary authority to Defendant Pharmacia or its delegate. As there is no evidence that anyone other than Defendant Pharmacia or its delegate made SPP determinations, we review all of Defendant Pharmacia's Plan determinations under the arbitrary

and capricious standard.[3] *Wright*, 402 F.3d at 74.

Plaintiff raised several arguments to support his complaint that Defendant Pharmacia's interpretation and application of the SPP was arbitrary and capricious. *Docket Document No. 1.* In its motion for summary judgment, Defendant Pharmacia addresses each of these arguments, contending that none of their decisions were unreasonable, and, therefore, Plaintiff's ERISA claims merit dismissal. *Docket Documents Nos. 29, 67.*

### a. *"Comparable Position" Determination Per the SPP*

Defendant Pharmacia first argues that it acted within its discretionary authority in determining a "comparable position" for Plaintiff. *Docket Document No. 29.* Plaintiff counters that the comparable position did not have "a level of responsibility that is substantially similar," and, therefore, was in violation of the SPP and ERISA. *Docket Document No. 37.*

As noted above, the SPP grants Defendant Pharmacia the discretionary authority to determine what constitutes a comparable position under the plan. *Docket Document No. 28, Exh. 10.* Section 2.06 defines "comparable position" as: (1) "the individual's level of responsibilities is sub-

stantially similar, *as determined by the Company,* to the individual's immediately prior position with the Company"; (2) "requiring similar skill levels and offering similar pay (within 10%)"; and (3) "the Employee is not asked to move his or her principal business location more than 50 miles." *Id.* (emphasis added). The SPD, which was provided to all affected employees, also states that Defendant Pharmacia has discretionary authority in this regard. *Docket Document No. 46, Exh. 10* ("[A] position shall be considered as a 'Similar Position' if it is an employment within the Company ... where the Employee has (1) a level of responsibility that is substantially similar, *as determined by the Company* . . . .") (emphasis added).

■ Plaintiff accepts that the comparable position satisfied (2) and (3) of the SPP requirements. *Docket Document No. 37.* Plaintiff's only contention is that the comparable position of Microbiologist III was essentially a demotion because it lacked the prestige of his prior position. *Docket Document No. 38* ("[H]e was well aware that the position was the equivalent of a demotion.").

■ It is the hallmark of arbitrary and capricious review, however, that a court does not substitute its judgment for that of the decision-maker. *Terry*, 145 F.3d at 40.

---

3. Plaintiff contends that the plan determinations were not made by Defendant Pharmacia or its delegate, but rather by the Senior Human Resources Director, Linda Díaz. *Docket Document No. 37.* Since Díaz was not a delegate of Defendant Pharmacia's discretionary authority, Plaintiff argues that any determinations by Díaz should be analyzed according to a *de novo* standard of review. *Id.* Plaintiff's argument is plainly inconsistent, however, because if Díaz was not a delegate of the discretionary authority, as Plaintiff contends, then Díaz' "determinations," whatever they were, had no bearing on the denial of Plaintiff's benefits.

Furthermore, there is no evidence that Díaz made any SPP determinations. According to Defendant Pharmacia, Díaz merely relayed information provided to her by the corporate officer, Julie Uebler. *Docket Document No. 28.* Plaintiff disputes this claim, via hearsay objections that fail to comprehend the meaning of "hearsay." *See Docket Document No. 38.* The disputed deposition testimony provided by Díaz regards Díaz' personal knowledge and, therefore, is not hearsay. *See Docket Document No. 28, Exh. 9.* In the end, Plaintiff's assertion that Díaz was the decision maker is so rife with inconsistencies and illogical interpretations that it merits no consideration. *See, e.g., id.*

Even if we were inclined to agree with Plaintiff that after twenty-nine years of service to Defendant Pharmacia he deserved a more prestigious position, we would not be at liberty to disturb a discretionary decision that is neither arbitrary nor capricious. Plaintiff had a bachelor's degree in biology, worked for the company for twenty-nine years, and received generally excellent reviews of his work during that time. *Docket Document No. 1.* As such, his resume fits squarely with the "comparable position" of Microbiologist III to which he was assigned. *Docket Document No. 28, Exh. 19.*

Not only did Plaintiff clearly fit the qualifications of the position to which he was assigned, but the employees who were assigned to the positions that he desired were as qualified, or more qualified, for those positions than Plaintiff. *See Docket Document No. 28.* Finding no evidence of any procedural irregularity and noting that Plaintiff's qualifications fit the requirements of the Microbiologist III position, we conclude that Defendant Pharmacia's selection of a "comparable position" for Plaintiff was reasonable, and should not be disturbed. *Terry,* 145 F.3d at 40.

### b. *SPP Eligibility*

■ Defendant Pharmacia next argues that because Plaintiff had been assigned to the comparable position of Microbiologist III, he was no longer eligible for the SPP benefits that he seeks. *Docket Document Nos. 28, 67.* To dispute Defendant Pharmacia's contention, and insist that Defendant Pharmacia's denial of benefits is contrary to ERISA, Plaintiff resorts to various inconsistent readings of the SPP that stubbornly refuse to accept the plan's plain terms. *Docket Document Nos. 37, 81.*

The second paragraph of the SPD, which outlined in layman terms SPP eligibility, reads, "The benefits under the Plan shall *not* be provided to any Employee whose employment termination is due to (1) his or her voluntary resignation from the Company . . . ." *Docket Document No. 46, Exh. 10.*[4] In its discretionary authority, Defendant Pharmacia determined that an employee who resigned from the company after being reassigned to a comparable position was not eligible for SPP benefits. *Docket Document No. 67.* After he had been assigned to the comparable position, Plaintiff decided to resign and opt for the SPP. *Docket Document Nos. 28, 38.* Defendant Pharmacia informed him that it was "too late" to receive SPP benefits because, upon receiving a comparable position, Plaintiff's decision to leave the company was a voluntary termination.[5] *See id.* Since this determination was consistent with the terms of the SPD, Defendant Pharmacia's denial of SPP benefits was reasonable.

---

4. The SPD provided to Plaintiff does not refer to Defendant Pharmacia's discretionary authority regarding the determination of SPP eligibility, *Docket Document No. 46 Exh. 10,* but we apply the arbitrary and capricious standard nonetheless. *Fenton,* 400 F.3d at 91 ("The silence of the summary plan description on the issue of the administrator's discretion does not create a direct conflict with any particular Plan provision and therefore does not warrant *de novo* review.").

5. Plaintiff acknowledged that this justification had been fully explained to him in a letter dated July 5, 2002. *Docket Document No. 85, Exh. 15* ("In the letter subscribed by Linda E. Díaz, dated December 12, 2001, she tells us that the reason why my husband was not able to join the Separation Benefits Plan is that he had been assigned to a position as a Microbiologist III . . . ."). Thus, Plaintiff's contention that the denial of benefits was due to the closing of the SPP "window" is inaccurate and irrelevant. *Docket Document No. 37.*

### 3. ERISA Claim for Denial of LTD Benefits

Finally, Defendant Pharmacia asseverates that Plaintiff's claim for LTD benefits is based upon an outdated employee benefits table in effect in 1997 that was amended in 1999. *Docket Document No. 29.* Defendant Pharmacia also asserts that it notified employees of plan alterations in a manner consistent with ERISA's regulations, thereby negating Plaintiff's ERISA claims. *Docket Document No. 67.* Plaintiff counters that he "was not notified as to any changes in the LTD program nor information regarding the classification of a 'serious health condition' in which he would have received 100% of his salary and not 60%." *Docket Document No. 38.* Plaintiff further submits that he consistently asked for the plan documents and that these requests were denied. *Docket Document No. 1.*

#### a. Failure to Notify

■ When a company modifies its plan, ERISA's notice requirements are "quite loose." *Dall v. Chinet Co.,* 33 F.Supp.2d 26, 33 (D.Me.1998). "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss–Wright Corp. v. Frank C. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). An ERISA plan administrator must simply furnish all participants with a summary of the material modifications made to a plan no later than 210 days after the end of the year wherein the changes were to go into effect. 29 U.S.C. § 1024(b)(1).

■ On October 21, 1999, two months before the effective date of the LTD benefits amendment, Defendant Pharmacia informed plan participants of the relevant amendment to the plan via a two-page letter written in the Spanish language. *Docket Document No. 85, Exh. 15.* Effective January 1, 2000, benefits under the LTD plan were adjusted to 60% of the employee's monthly salary. *Id.*

■ Plaintiff alleges that he never received this letter. *Docket Document No. 81.* Notwithstanding Plaintiff's allegations to the contrary, there is a widely held presumption that an addressee received a properly addressed and stamped letter that was mailed in a timely fashion. *See, e.g., Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 895 n. 4 (1st Cir.1992). There is no evidence that the letter was returned to Defendant Pharmacia nor is there any evidence that the letter was improperly addressed. Thus, Plaintiff has provided no evidence to rebut the presumption that Defendant Pharmacia fulfilled its fiduciary duty. Accordingly, the application of the LTD amendments to Plaintiff do not violate ERISA.

#### b. Failure to Comply with Plaintiff's Request for Full Plan

■ Plaintiff also argues that he sent over ten letters to Defendant Pharmacia in an attempt to obtain the information regarding his LTD benefits and that these requests were routinely denied. *Docket Document No. 37.* According to Plaintiff, "There is not one letter that [sic] Linda Díaz addresses these specific inquiries and she even refused to submit to the [P]laintiffs the SPD of the disability plan." *Id.* Defendant Pharmacia replies that a summary of material modifications ("SMM") was provided to Plaintiff on October 21, 1999, explaining relevant changes to the LTD. *Docket Document No. 67.* Defendant Pharmacia further contends that the request for the SPD was unreasonable, since an updated SPD is only prepared five years from the date of effectiveness of the changes to the disability plan, consistent with the requirements of ERISA.

*Docket Document No. 67* (citing 29 U.S.C. § 1024(b)(1) ("The administrator shall furnish each participant ... every fifth year ... an updated summary plan description ....")).

■ A plan participant who requests that the plan administrator furnish him with information that should be provided automatically pursuant to § 1024(b)(1) triggers § 1132(c), and an administrator has thirty days to respond. 29 U.S.C. § 1132(c) (stating that an administrator who fails or refuses to comply with a request for "any information which such administrator is required ... to furnish" to a participant may be liable to such participant); *Crotty v. Cook*, 121 F.3d 541, 548 (9th Cir.1997) (holding that if a participant requests information, he is automatically entitled to the civil enforcement penalty provided for by 29 U.S.C. § 1024(b)(1)); *Brooks v. Metrica, Inc.*, 1 F.Supp.2d 559, 564–65 (E.D.Va.1998) (holding that violation of ERISA disclosure section 1024(b)(1) results in penalties under 29 U.S.C. § 1132(c)); *James v. New York City Dist. Council of Carpenters' Benefits Funds*, 947 F.Supp. 622, 633 (E.D.N.Y. 1996) (applying 29 U.S.C. § 1132(c) penalty to administrator who failed to supply information required to be furnished to plan participants under 29 U.S.C. § 1024(b)(1)). Thus, although the administrator has 210 days after the end of the plan year to automatically disclose to participants a change to the plan made in that year, if a participant to the plan specifically requests something he was entitled to receive automatically, then the civil penalty provision, § 1132(c), applies and the administrator has thirty days to comply with the request. *Dall*, 33 F.Supp.2d at 34.

First Circuit cases addressing the notice requirements involve a failure or outright refusal to furnish plan information. *See, e.g., Dall*, 33 F.Supp.2d at 34; *Tucker v. General Motors Retirement Program*, 949 F.Supp. 47, 55 (D.Mass.1996). None of these cases address Plaintiff's contention that Defendant Pharmacia failed to refurnish information.[6] *Docket Document No. 37.*

■ Section 1024(b)(1)'s provision requirements are not limited to requests for information that had not been previously provided. *See* 29 U.S.C. § 1024(b)(1). Rather, § 1024(b) generally speaks to full disclosure on the part of the plan administrator. *See id.* Specifically, § 1024(b)(4) mandates that the plan administrator shall,

---

6. Germane to this issue is *Krohn v. Huron Memorial Hospital*, wherein the plaintiff requested information regarding her eligibility for long-term disability benefits. 173 F.3d 542, 545 (6th Cir.1999). The defendant did not provide the requested documents, but argued that § 1132(c) should not apply because it had already provided her with a summary plan description, an employee handbook, and an individual meeting with the plan administrator. *Id.* at 550. The Court rejected the defendant's argument, reasoning, "Providing a summary plan description several years before the request for information does not excuse the [defendant] from its duty to respond fully and accurately to later inquiries regarding benefits." *Id.* Accordingly, the Court held that provision of a summary plan description did not discharge or fulfill the fiduciary's obligation to provide complete material information upon the beneficiary's request. *Id.* at 548 ("[The] duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful."). The reasoning and outcome of *Krohn* are distinguishable from the present case, however, because the fiduciary's failures in *Krohn* significantly impaired the beneficiary's ability to assert her rights. *Id.* In the present case, even if Defendant Pharmacia failed in its affirmative duty to inform the Plaintiff of the full contours of his LTD benefits, the failure had no effect on Plaintiff's eligibility for LTD benefits.

"upon written request of any participant or beneficiary furnish a copy of the latest updated [SPD], and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

It appears that Plaintiff first requested the information from Defendant Pharmacia in a letter dated July 5, 2002 and sent follow-up letters on July 24 and August 14. *Docket Document No. 85, Exh. 15.* It was not until a letter dated August 29, 2002, that Díaz addressed Plaintiff's concerns regarding the LTD benefits program, providing the pertinent SMM dated October 19, 2001 and all other requested documents. *Docket Document No. 85, Exh. 17.* Plaintiff submitted numerous follow-up letters, requesting further explanation and repeatedly stating that he did not understand why his benefits had changed. *See, e.g., Docket Document No. 79, Exh. 3* (stating, in a letter dated March 18, 2003, that he did not "understand the reason why the benefits indicated under the 'Employee Serious Health Condition' has not been applied, as described in the Pharmacia Employee Benefits Manual"). While Plaintiff alleges that Defendant Pharmacia was reticent to explain its benefits package, the initial August 29, 2002, reply letter includes the relevant SMM that clearly states, "If you continue disabled after 26 weeks on *Short Term Disability,* you may continue under *Long Term Disability (before DLOA )* for a period of 24 months." *Docket Document No. 85, Exh. 17.* The terms of that letter are clear and directly respond to Plaintiff's requests. Therefore, any delinquency regarding the duty to communicate the terms of the plan to Plaintiff under § 1024(b)(4) was remedied by the letter dated August 29, 2002. More importantly, there is no allegation that De-

fendant's delinquency in any way prejudiced Plaintiff.

Section 1132(c)(1) requires plan administrators to furnish the requested information within thirty days after a § 1024(b)(4) request. An administrator who fails to provide the material requested within thirty days may in the court's discretion be personally liable to the participant in the amount of up to $100 a day from the date of such failure or refusal. *Id.* Plaintiff's first request was made on July 5, 2002, and Defendant Pharmacia did not respond until August 29, 2002. Because fifty-five days elapsed, the reply was twenty-five days late. Because Plaintiff clearly requested the SMM and other relevant documents and Defendant Pharmacia waited far too long to reply to Plaintiff's obviously desperate requests, we exercise the discretion granted us under § 1132(c)(1) to find Defendant Pharmacia liable to Plaintiff in the amount of $100 a day from the date of such failure. *See* § 1132(c)(1).

Therefore, consistent with § 1132(c)(1), judgment shall be entered for Plaintiff in the amount of $2,500.00. As for the remaining LTD-oriented ERISA claims, we grant Defendant Pharmacia's motion for summary judgment.

**B.** ***ERISA Preemption of Commonwealth Law Claims***

Turning from the federal to the Commonwealth law claims, Defendant Pharmacia argues that Plaintiff's various Commonwealth law claims should be dismissed because they are preempted by ERISA. *Docket Document Nos. 28, 67.* Plaintiff counters that the Commonwealth law claims are distinct from the ERISA claims and, therefore, are not preempted. *Docket Document Nos. 37, 81.*

Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficia-

ries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004) (quoting 29 U.S.C. § 1001(b)). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive preemption provisions, *see* 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Alessi*, 451 U.S. at 523, 101 S.Ct. 1895.

▮▮▮ ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement." *Russell*, 473 U.S. at 147, 105 S.Ct. 3085 (internal quotation marks and citation omitted). This integrated enforcement mechanism, 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress purpose of creating a comprehensive statute for the regulation of employee benefit plans. Therefore, any Commonwealth-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is, therefore, preempted. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *see also Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143–45, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

▮▮▮ The preemptive force of ERISA § 502(a) is still stronger. ERISA § 502(a)(1)(B) converts Commonwealth causes of action into federal ones for purposes of determining the propriety of removal. *Aetna*, 124 S.Ct. at 2496. Thus, the ERISA civil enforcement mechanism is one of those provisions with such "extraor-

dinary pre-emptive power" that it "converts an ordinary commonwealth common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

▮▮▮ ERISA provides for preemption of Commonwealth law causes of action "insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (1999 & Supp.2004); *Carpenters Local Union No. 26 v. United States Fidelity & Guar. Co.*, 215 F.3d 136, 139 (1st Cir.2000). We underscore the fact that "ERISA preempts state laws that *relate to* covered plans; it does not require that a state law establish such a plan, or expressly contemplate existing plans in order for preemption to apply." *Rosario–Cordero v. Crowley Towing & Transportation Co.*, 46 F.3d 120, 127 (1st Cir.1995); *see also Vartanian v. Monsanto Co.*, 14 F.3d 697, 701 (1st Cir.1994) (holding that ERISA would preempt any state law that " 'relates to' an employee benefit plan ... if it has a connection with or references to such a plan") (quoting *Ingersoll–Rand*, 498 U.S. at 139, 111 S.Ct. 478).

"ERISA preemption analysis thus involves two central questions: (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." *McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 36 (1st Cir.1998). ERISA preemption analysis "must be guided by respect for the separate spheres of governmental authority preserved in our federalist system." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 19, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). We proceed to consider Plaintiff's Commonwealth law claims under this framework.

### 1. Negligent/Intentional Infliction of Emotional Distress and Fraudulent Inducement/Concealment

The Plaintiff's first two Commonwealth law claims are for negligent and/or intentional infliction of emotional distress and fraudulent inducement/concealment filed under Article 1802 of the Puerto Rico Civil Code. *Docket Document No. 1.* Defendant Pharmacia moves for summary judgment as to these claims arguing that the Commonwealth law claims necessarily require interpretation of the ERISA-covered plan and, therefore, are preempted by ERISA. *Docket Document No. 67.* Plaintiff barely counters this argument, merely stating that "[t]here is not one single argument that establishes that the state law claim have [sic] anything to do with the entitlement [to] plaintiffs' ERISA benefits." *Docket Document No. 81.*

Article 1802 of the Puerto Rico Civil Code is a general provision, articulating the "[o]bligation when damage caused by fault or negligence."[7] 31 L.P.R.A. § 5141. The mere fact that it is a general clause with no reference to employee benefit plans, however, does not exclude it from ERISA preemption. *Boston Children's Heart Found., Inc. v. Nadal–Ginard*, 73 F.3d 429, 439 (1st Cir.1996) ("A court cannot conclude that a state law is one of general applicability, and as such is not preempted by ERISA, based on the form or label of the law . . . ."). "Absent precedent on a closely-related problem, the inquiry into whether a state law 'relates to' an ERISA plan or is merely 'tenuous, remote, or peripheral' requires a court to look at the facts of the particular case." *Id.* at 439–40.

In his complaint, Plaintiff repeatedly refers to the SPP in his cause of action for emotional distress. *Docket Document No. 1.* Plaintiff's allegations assert that "Defendants concealed to plaintiff that the SPP's deadline had been changed," that Codefendant Sanabria "fail[ed] to mention to plaintiff any changes to the SPP," and that Plaintiff's injuries were caused by a "complete disregard of his [SPP] application and requests." *Id.* Plaintiff repeatedly refers to the SPP, and the basis of his negligent and/or intentional infliction of emotional distress claim turns upon Defendant Pharmacia's failures to be forthcoming about the SPP's contents. *Id.*

As the First Circuit held in *Danca v. Private Health Care Systems, Inc.*, claims of negligent infliction of emotional distress under state law that necessarily implicate the administration of an employee benefit plan "indisputably create a threat of conflicting and inconsistent state and local regulation of the administration of ERISA plans." 185 F.3d 1, 7 (1st Cir. 1999) (citing *New York State Conference of Blue Cross*, 514 U.S. at 656–58, 115 S.Ct. 1671). If this type of claim were not preempted, a different standard would develop as to the appropriate behavior of the personnel responsible for the administration of the plan. *See Danca*, 185 F.3d at 7.

In order to resolve Plaintiff's emotional distress claim, we would have to determine Defendant Pharmacia's disclosure duties as created by ERISA. 29 U.S.C. § 1024(b)(1). As discussed above, ERISA dictates the extent of these duties. *See, supra*, Part III.A.3.a. Any determination of Plaintiff's Commonwealth law claim, therefore, would require an interpretation of ERISA. As such, Plaintiff's claims

---

7. The Code section, in its entirety, reads:
   A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.
   31 L.P.R.A. § 5141.

clearly "relate to" ERISA, and are necessarily preempted. *See Danca*, 185 F.3d at 7; *McMahon*, 162 F.3d at 36.

Turning to the fraudulent inducement/concealment claim, Plaintiff's cause of action similarly makes numerous references to the SPP, alleging that Defendant Pharmacia "fraudulently induced plaintiff to continue working for the company's benefit ... while changing behind the plaintiff's back the deadline set in the SPP for the benefits." *Docket Document No. 1*. The claim further states that "[i]n essence, the SPP expiration date was altered by the company." *Id*. Finally, the complaint states that "Defendants made the representations knowing them to be false ... with the intent to fraudulently induce plaintiff to rely on them by acceding to continue working for the corporation." *Id*.

Like the emotional distress claim, Plaintiff's statement of the fraud cause of action is based in large part upon Defendant Pharmacia's alleged noncompliance with the disclosure requirements of ERISA. *See Docket Document No. 1;* 29 U.S.C. § 1024(b)(1). In order to determine whether Defendant Pharmacia's conduct was fraudulent, we would have to consider the degree to which it complied with ERISA's requirements. *See Danca*, 185 F.3d at 7; *McMahon*, 162 F.3d at 36. As a result, we again conclude that Plaintiff's claims clearly "relate to" ERISA. *Id*.

Accordingly, ERISA preempts Plaintiff's Commonwealth law claims of negligent/intentional infliction of emotional distress and fraudulent inducement/concealment.

### C. *Supplemental Jurisdiction*

The supplemental jurisdiction statute provides that "district courts may decline to exercise supplemental jurisdiction" when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Because we grant Defendants' motion for summary judgment regarding the federal claims and federal preemption, we decline to exercise supplemental jurisdiction over Plaintiffs' non-preempted Commonwealth law claim for invasion of privacy. *See Cannarozzi v. Fiumara*, 371 F.3d 1, 7 (1st Cir.2004). Plaintiffs are, of course, free to pursue that cause of action in the courts of Puerto Rico. *Figueroa v. Rivera*, 147 F.3d 77, 83 (1st Cir.1998).

### IV.

#### *Conclusion*

In accordance with the foregoing, we exercise our discretionary authority under § 1132(c)(1) and **ORDER** Defendant Pharmacia to pay Plaintiffs $2,500.00 for its failure to provide the requested documents within thirty days. We **GRANT** Defendant Pharmacia's motion for summary judgment on each of Plaintiffs' other claims, except the Commonwealth law claim for invasion of privacy. Plaintiffs' invasion of privacy claim is **DISMISSED WITHOUT PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**