# United States Court of Appeals

## For the First Circuit

No. 06-2493

EMORY ZIPPERER,

Plaintiff, Appellant,

v.

RAYTHEON COMPANY, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Lynch, Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Joseph P. Dever, with whom Theresa Finn Dever and Riley & Dever, P.C. were on brief, for appellant.
Constance M. McGrane, with whom James F. Kavanaugh, Jr. and Conn Kavanaugh Rosenthal Peisch & Ford, LLP were on brief, for appellee.

July 12, 2007

**HOWARD**, **Circuit Judge**. In this appeal, Plaintiff Emory Zipperer seeks reversal of the district court's grant of judgment on the pleadings in favor of his former employer, Raytheon Company, Inc. ("Raytheon"). Zipperer asserted Massachusetts state law claims of negligence, equitable estoppel and negligent misrepresentation against Raytheon after Raytheon provided him with an erroneous estimate of his retirement benefits which, he claims, led to his voluntary early retirement. The district court, essentially adopting a magistrate judge's report and recommendation, ruled that Zipperer's claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. We affirm.

## I. FACTUAL BACKGROUND

We state the facts as pleaded in the complaint. See Mass. Nurses Ass'n v. N. Adams State Reg'l Hosp., 467 F.3d 27, 31 (1st Cir. 2006). In November 1972, Zipperer began working for United Engineers & Constructors, Inc. ("UEC"), a Raytheon subsidiary, as a field engineer in UEC's nuclear power division. Zipperer began participating in the UEC retirement plan in January 1975.

At Raytheon's request, in November 1990 Zipperer began working for another Raytheon subsidiary, Raytheon Services, Nevada ("RSN"), a specialty company used by Raytheon solely for the purpose of administering work for the United States Department of

-2-

Energy ("DOE"). While working at RSN, Zipperer remained a Raytheon employee, and no funds were transferred from the UEC retirement plan to the RSN pension plan. However, the Raytheon Benefit Center, which administered both plans, adjusted Zipperer's service date for the RSN plan to reflect his previous service at UEC.

Zipperer's employment at RSN ended in October 1993. The next month, Zipperer began working for Raytheon Engineers & Constructors, ("REC"), a successor to UEC. Upon his hiring, although no trust funds were transferred, REC credited Zipperer for his prior years of service with UEC for purposes of calculating his pension benefits. As with the Raytheon-affiliated UEC and RSN plans, the REC benefit plan was also administered by the Raytheon Benefit Center. On December 30, 1995, according to the Raytheon Benefit Center, RSN's pension trust funds were transferred to the Bechtel Nevada Employee Retirement Plan when Bechtel Nevada replaced RSN as a DOE contractor. Neither Raytheon nor RSN notified Zipperer's then-current employer, REC, that the RSN trust fund monies attributable to Zipperer's vested RSN benefit, which also included his prior service at UEC, had been transferred to Bechtel. None of the Raytheon pension plans was amended to reflect the transfer. Thus, when REC was purchased by Washington Group International ("WGI") in July 2000, Raytheon calculated an overstated benefit amount attributable to Zipperer, erroneously including amounts attributable to his original UEC service, which

had already been subsumed into the RSN plan eventually transferred to Bechtel. In other words, both Bechtel and Raytheon were including Zipperer's original UEC service time in their respective pension calculations.

In late 1999, at age 55, Zipperer requested from REC an estimate of his pension benefit, noting his prior service with UEC and "Raytheon Company(s)." According to the benefit computation subsequently provided to him by REC, Zipperer could expect to receive a monthly benefit of $1,100.17 if he chose a single life annuity with no right of survivorship, $1,063.11 if he chose a ten year "certain and continuous option," and $980.55 if he chose a joint and survivor annuity. Basing their decision on the benefit estimate provided by Raytheon, Zipperer and his wife decided to retire, shortly after the sale of REC to WGI. At the time of his retirement, in September 2000, Zipperer was 56 years old and was earning $107,484 annually as a Project Control Manager.

Zipperer, who chose the joint and survivor annuity, subsequently began receiving monthly pension payments from Raytheon of $840.64, approximately $140 less than the previous estimate. In June 2001, the Raytheon Benefit Center advised Zipperer in writing that his pension benefits had been overstated and that he was entitled to a monthly benefit of only $400.06. Zipperer, who concedes that he is currently receiving a pension from Bechtel, the amount of which takes into consideration his service time at RSN

and UEC, was unsuccessful in his internal appeals of the benefit determination. After exhausting the internal appeals process, Zipperer filed a complaint against Raytheon in Massachusetts Superior Court alleging negligence, equitable estoppel and negligent misrepresentation. Raytheon timely removed the case to federal court, and subsequently moved for judgment on the pleadings on the ground that Zipperer's claims were preempted by ERISA. After a hearing, a magistrate judge recommended allowing the motion. The magistrate judge concluded that:

> Allowing a cause of action to proceed for the negligence in making the representation or the negligence in maintaining and transferring the pertinent records amounts to an alternative enforcement mechanism to enforce (or estop the employer from denying) extra-contractual benefits. Such claims inevitably and directly conflict with the carefully chosen and carefully limited remedies provided under ERISA . . . . Regardless of the label of the state law claims, in essence they seek extra-contractual benefits not authorized by the terms of the Plan. Such an end run around the carefully crafted benefits Raytheon chose to provide amounts to an attempt to authorize remedies beyond those provided by the Plan.

Report and Recommendation at 10.

Zipperer objected to the magistrate judge's recommendation, see Fed. R. Civ. P. 72, but the district court

adopted the recommendations in all material respects.[1]  This appeal followed.

## II.  DISCUSSION

We review de novo the district court's grant of judgment on the pleadings.  Mass. Nurses Ass'n, 467 F.3d at 31.  We view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences in his favor.  Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006).  Judgment on the pleadings is proper "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.  Id.

Zipperer advances several theories on appeal.  First, he argues that his claims do not relate to Raytheon's retirement plan, and do not duplicate, supplement or supplant ERISA's civil enforcement provisions.  Instead, he says, his claims relate only to Raytheon's "independent legal obligation" to keep proper records.  He further argues that his claims do not relate to the retirement plan, because he is seeking only negligence damages and not reinstatement of promised benefits.  Finally, Zipperer maintains that even if preemption would otherwise be appropriate, the district court erroneously concluded that Raytheon was acting as "an ERISA employer" during the relevant time period.

---

[1]Both the magistrate judge and the district court provided Zipperer with opportunities to amend his Complaint.  He did not accept either invitation.

Our analysis begins with § 514 of ERISA, which provides that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."[2] 29 U.S.C. § 1144(a). "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). A law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983)). A state law can be considered "related to" a benefit plan--and thus preempted--"even if the law is not specifically designed to affect such plans, or the effect is only indirect." Id. (quoting Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 47 (1987)).

While ERISA's preemption is not boundless, it is far reaching. In determining the reach of ERISA preemption, the Supreme Court has cautioned against a literal reading of ERISA §514(a)'s "relate to" standard, and ruled that courts must "'look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.'" Hampers v. W.R. Grace & Co., 202 F.3d 44, 51 (1st Cir. 2000) (quoting N.Y. State Conference of Blue Cross & Blue Shield Plans v.

_____

[2]There is no dispute that the Plan at issue in this case is an "employee benefit plan," within the meaning of ERISA.

-7-

Travelers Ins. Co., 514 U.S. 645, 656 (1995)). ERISA's objectives include providing a "uniform national administration of ERISA plans" and avoiding inconsistent state regulation of such plans. Danca v. Private Health Care Sys., Inc.,185 F.3d 1, 7 (1st Cir. 1999) (citing Travelers, 514 U.S. at 656-58). Three categories of state regulation that have been identified as conflicting with these objectives are: 1) those that mandate employee benefit structures or their administration; 2) those that bind plan administrators to a particular choice; and 3) causes of action that provide alternative enforcement mechanisms to ERISA's own enforcement scheme. Travelers, 514 U.S. at 658-59; Hampers, 202 F.3d at 44. Looking to the real nature of the plaintiff's claims, regardless of how they are characterized in his complaint, Hampers, 202 F.3d at 51, we conclude that the first and third categories of conflicting state regulation are implicated here.

As mentioned, Zipperer first argues that his suit does not relate to Raytheon's retirement plan, and does not duplicate, supplement or supplant ERISA's civil enforcement provisions. We disagree. The complaint's three counts rely on the common claim that Raytheon's negligent recordkeeping led to his reliance on an erroneous estimate of his retirement benefits. In our view, even a narrow reading of section 514(a)'s "related to" provision yields a conclusion that Zipperer's claims are preempted, and that is because the claims can only be evaluated with respect to Raytheon's

recordkeeping responsibilities for the plan. Such responsibilities were part and parcel of Raytheon's plan administration. Subjecting Raytheon's plan administration to the state law scrutiny Zipperer seeks would conflict with ERISA's proscription against state law "mandat[ing] plan administration" and would also impermissibly create "an alternative enforcement scheme" to ERISA's own recordkeeping and reporting requirements. Travelers, 514 U.S. at 658-59; Hampers, 202 F.3d at 51. Moreover, allowing a claim to proceed under Massachusetts law would inexorably--and impermissibly--lead to inconsistent state regulations, as state courts "develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction. Such an outcome is fundamentally at odds" with ERISA's goal of uniformity. McClendon, 489 U.S. at 142.

If we had any doubt about whether Zipperer's claims are preempted, we note that we faced a nearly identical situation in Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790 (1st Cir 1995). There, the plaintiff filed state law misrepresentation claims against his employer after he accepted an early retirement offer which, it turns out, was based on inaccurate information provided by the employer. Id. at 792. We affirmed the dismissal of the complaint on preemption grounds, noting that an analysis of plaintiff's claims would "ultimately depend on an analysis" of the

ERISA plan at issue, to which the claims were thus "inseparably connected." Id. at 795. Similarly, Zipperer's claims are "inseparably connected" to the Raytheon plan and its administration. See also Degnan v. Publicker Indus., Inc., 83 F.3d 27 (1st Cir. 1996) (affirming dismissal, on preemption grounds, of plaintiff's state law misrepresentation claims against a former employer who allegedly reneged on certain promises it made regarding plaintiff's retirement benefits).

Also instructive is Danca. In that case, the plaintiff and her family members sued an ERISA health insurer and utilization review firm for alleged negligence in the course of treatment precertification. Danca, 185 F.3d at 2. We affirmed the dismissal of claims based on negligent supervision and training of precertification personnel because such claims would "indisputably create a threat of conflicting and inconsistent state and local regulation of the administration of ERISA plans." Id. at 7. Our decision in Danca reflected the concern that "[d]ifferent states could apply different standards for what constitutes a negligent precertification training or practice," a result ERISA's preemption clause was designed to avoid. Id.

Our concern here is no different. As we see it, Zipperer is asking that Massachusetts state law obligations be engrafted onto ERISA. Such claims, if allowed, would lead to the "different administrative procedures in different jurisdictions" that ERISA is

designed to avoid. As such, they are preempted. The fact that Zipperer is seeking negligence damages and not reinstatement of benefits does not alter this result, as any determination of negligence, in the present context, necessarily "relates to" the ERISA plan.

Zipperer also argues that it is unclear from the complaint whether Raytheon is either an ERISA employer or plan administrator, and thus whether it is entitled to preemption. We disagree. In our view the district court correctly concluded that Zipperer's claims only exist by virtue of Raytheon's status as an ERISA employer and its administration of the ERISA plan at issue. Hampers, 202 F.3d at 53.

We have reviewed the other issues Zipperer raised, and find them without merit.

### III. CONCLUSION

We conclude that Zipperer's claims for negligence, equitable estoppel and negligent misrepresentation are preempted by ERISA.

Affirmed.