Dr. Jorge GARIB–BAZAIN, Plaintiff,

v.

**HOSPITAL ESPAÑOL AUXILIO MUTUO, INC., et al.,
Defendants.**

Civil No. 10–1290 (FAB).

United States District Court,
D. Puerto Rico.

March 25, 2011.

Enrique J. Mendoza–Mendez, Mendoza Law Office, San Juan, PR, for Plaintiff.

Monica I. De–Jesus–Santana, Pedro J. Manzano–Yates, Fiddler Gonzalez & Rodriguez, P.S.C, San Juan, PR, for Defendants.

## OPINION & ORDER [1]

BESOSA, District Judge.

Plaintiff has filed a motion for remand. (Docket No. 6.) Defendants have opposed the motion, (Docket Nos. 8 & 9), and plaintiff has replied. (Docket No. 14.)

Having considered the arguments contained in plaintiff's motion, defendants' oppositions and plaintiff's reply, the Court **GRANTS** plaintiff's motion for remand. (Docket No. 6.)

## I. FACTUAL BACKGROUND

Dr. Jorge Garib–Bazain ("Dr. Garib") is a medical doctor with a specialty in Internal Medicine and a subspecialty in Infectious Diseases. In 1982, the Board of Examiners of Puerto Rico ("TEM") issued him a medical license. He then obtained privileges at the Auxilio Mutuo Hospital ("Auxilio Mutuo"). Those privileges were later revoked after Dr. Garib was convicted by a federal jury in February of 2000 for crimes of conspiracy to defraud the United States and for giving false statements to a grand jury. In April of 2004, the TEM permanently revoked his medical license. Because of his conviction, Dr. Garib served time in prison in the United States, but from 2006, he served the remainder of his sentence on probation. (Docket No. 15–3 ¶¶ 4, 6–10.)

In January, 2009, the TEM reinstated Dr. Garib's medical license, and in February, 2009 he requested Auxilio Mutuo to grant him privileges again. Auxilio Mutuo's Credentials Committee sent Dr. Garib's request to the Department of Medicine, which approved his request. Dr. Garib's request was then presented and approved in a meeting of the Medical Staff, and was later sent to the Executive Committee for approval. The Executive Committee, however, did not approve Dr. Garib's request. The Executive Committee based its decision on the following: (a) that in 1995, Dr. Garib obtained copies of several pathology reports of patients that were not his, in contempt of applicable proceedings, and that those reports were not used for institutional purposes; (b) that during his Residence Program in Internal Medicine at the San Juan Veterans Hospital, his privileges were limited by an incident in which he resisted a personal attack against him with a firearm and that the alleged conduct was concealed in his request for privileges at the Auxilio Mutuo; (c) that his federal conviction undermined his credibility and the confidence expected of all members of the Medical Staff; and (d) "the existence of other matters". (*Id.* ¶¶ 17, 23–24, 27–29, 31–32.)

Due to the Executive Committee's adverse decision, Dr. Garib alleges that he denied the allegations formulated against him, requested an evidentiary hearing before the Hearing Committee and requested Auxilio Mutuo to produce certain documentation in preparation for the hearing. In January, 2010, Dr. Garib was informed that the Executive Committee would not grant the evidentiary hearing. The Executive Committee based its decision on the fact that Dr. Garib did not follow the established procedure in the hospital's By-laws, which require that each allegation formulated against him be specifically denied. As a result of Dr. Garib's failure to follow the established procedure, the Executive Committee concluded that the allegations made against him were to be deemed admitted. (*Id.* ¶¶ 33, 44, 46, 54.) Dr. Garib requested reconsideration of the determination not to grant him the hearing, but such reconsideration was denied. The de-

1. Myrgia Palacios, a fourth-year student at Interamerican University Law School, assisted in the preparation of this Opinion and Order.

nial of Dr. Garib's request for privileges was then sent to Auxilio Mutuo's Board of Directors ("Board") for final determination. (*Id.* ¶¶ 51–53.)

Dr. Garib asked the Board to return his request for privileges to the Executive Committee with instructions to hold the hearing that he had earlier requested but which had been denied. On March 19, 2010, the Board denied his petition, adopted the Executive Committee's adverse recommendation, and conclusively denied Dr. Garib's request for privileges. The Board also notified Dr. Garib of his right to a new hearing, which would be limited only to new allegations, excluding the allegations that had been earlier deemed admitted. Dr. Garib was also notified that certain documents he had asked for earlier were now available to him. (*Id.* ¶¶ 53–54.)

## II. PROCEDURAL BACKGROUND

On March 25, 2010 Dr. Garib filed suit against the following defendants: (1) Hospital Español Auxilio Mutuo, Inc., the entity that operates Auxilio Mutuo; (2) Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico, Inc., ("Partnership"), the entity that owns the annexes of Auxilio Mutuo; (3) Dr. Jose A. Isado–Zardon, who is an officer of Auxilio Mutuo and of the Partnership, the Medical Director of both institutions, a member of the Medical Executive Committee and a member of Auxilio Mutuo's Board; and (4) the conjugal partnership with Mrs. Isado–Zardon, (jointly referred to as "defendants"), in the Puerto Rico Court of First Instance, San Juan Superior Division, under case number KPE10–1201 (904). Dr. Garib alleged: (1) that some of the actions taken by defendants during the review of his request for privileges are contrary to the hospital's Bylaws (Docket No. 15–3 ¶¶ 30, 45–46, 52–53);

(2) that the Bylaws are "illegal" (Docket No. 15–3 ¶¶ 48, 61, 63–64); (3) that his rights had been violated because of those actions (Docket No. 15–3 ¶¶ 72–73, 75); and (4) that he has suffered damages as a result of those actions. (Docket No. 15–3 ¶ 80.) (Docket No. 15–3.)

The Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101–11152 ("HCQIA"), requires hospitals to report any adverse recommendation or decision to the "National Practitioner's Data Bank Adverse Information on Physician and Other Health Care Providers" ("Data Bank"). An adverse decision or recommendation is taken when a physician's privileges are denied or suspended, as a result of an evaluative peer review process. *Id.* at ¶¶ 49–50. In response to the adverse decision taken against him and in order to prevent Auxilio Mutuo from reporting the adverse decision to the Data Bank, Dr. Garib requested the following remedies: (1) a declaratory judgment; (2) a temporary restraining order (TRO); (3) a preliminary injunction; and (4) a permanent injunction. He also asked the Court to order defendants to grant the evidentiary hearing before the adverse recommendation became effective and claimed damages for violation of his rights. (*Id.* at ¶¶ 76–79.)

On April 7, 2010, the same day that the Puerto Rico Court of First Instance was to hold a preliminary injunction hearing, defendants removed the case to this Court. The Notice of Removal stayed the injunction hearing. (Docket No. 6 ¶ 10.) In support of the removal, defendants alleged: (1) that the Court has original federal question jurisdiction under 28 U.S.C. § 1441(a) because Dr. Garib anchors his claims to alleged actions and omissions that are contrary to the HCQIA, a federal statute; and (2) that the Court has supplemental jurisdiction under 28 U.S.C. § 1367

over Dr. Garib's claims based on Puerto Rico law because they are intimately related to the HCQIA federal claim. (Docket No. 1 ¶¶ 7–8.)

Plaintiff then filed a motion for remand in which they also requested sanctions and a temporary restraining order. (Docket No. 6.) Plaintiff's motion argues: (1) that the Court must remand the case back to the Puerto Rico Court of First Instance because of lack of subject-matter jurisdiction; (2) that sanctions must be imposed to defendants because their notice of removal stayed an injunction hearing that had been scheduled in the Puerto Rico Court; and (3) that if the case is not remanded, the Court should enter a temporary restraining order to prevent defendants from reporting the adverse recommendation to the Data Bank.[2]

Defendants opposed the motion for remand, arguing that the Court has subject-matter jurisdiction even though no federal cause of action exists in plaintiff's complaint: (1) because plaintiff's well-pleaded complaint raises a federal question; (2) because the federal question raised is substantial; and (3) because the issue before the Court is one that may be entertained without impermissibly tilting the balance of federal and state judicial responsibilities. (Docket Nos. 8 & 9.) Defendants further alleged that because the Supreme Court of Puerto Rico has never had the opportunity to interpret the HCQIA, federal courts are better equipped to handle matters related to the interpretation and scope of the HCQIA. (Docket No. 9 ¶ 2.) Plaintiff replied, but only to clarify that even though the Puerto Rico Supreme Court has not dealt with cases under HCQIA, the Puerto Rico Court of Appeals has, specifically with issues regarding immunity and the reasonableness of hospital Bylaws. (Docket No. 14.)

## III. STANDARD OF REVIEW

█ Federal courts are courts of limited jurisdiction. *See, e.g., Bonas v. Town of N. Smithfield*, 265 F.3d 69, 73 (1st Cir. 2001). A cause of action may be maintained in federal court "only if it involves a question of federal law, or if the controversy is between citizens of different states and the amount in controversy exceeds $75,000." 28 U.S.C. §§ 1331, 1332; *Hall v. Curran*, 599 F.3d 70, 71 (1st Cir.2010). There is a presumption that a cause lies outside of the court's limited jurisdiction, and that "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. U.S.*, 45 F.3d 520, 522 (1st Cir.1995).

█ A case may only be removed from state court if a federal court would have had subject-matter jurisdiction over the case if brought in federal court initially. *See Danca v. Private Health Care Sys. Inc.*, 185 F.3d 1, 4 (1st Cir.1999). Courts should interpret the removal statute to be "strictly construed", and, consequently, uncertainties must be resolved in favor of remand. *See Rossello–Gonzalez v. Calderon–Serra*, 398 F.3d 1, 11 (1st Cir.2004)

---

**2.** Dr. Garib later renewed his petition for an injunction hearing, (Docket No. 34), but defendants then notified the Court that Auxilio Mutuo had taken a final determination on Dr. Garib's request for privileges, (Docket No. 32), that they had already reported the adverse decision to the Data Bank as required by the HCQIA, and that the reporting already done made Dr. Garib's request for an injunction hearing moot. (Docket No. 38 ¶ 3.)

In light of this, Dr. Garib has asked the Court for another preliminary injunction, this time, asking the Court to order defendants to withdraw its notice from the Data Bank. (Docket Nos. 35 ¶¶ 12, 15.) Defendants opposed this motion, (Docket No. 38), and Dr. Garib has filed a reply. (Docket No. 41.)

(citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)).

## IV. DISCUSSION

Plaintiff has moved to remand on the ground that there is no subject-matter jurisdiction, while defendants claim federal question jurisdiction as the basis for removal. Defendants must therefore make "a 'colorable' showing that a basis for federal jurisdiction exists." *Danca*, 185 F.3d at 4 (citing *BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 832 (1st Cir.1997)).

 Federal question jurisdiction exists if the action arises "under the Constitution, laws, or treaties of the United States". 28 U.S.C. § 1331. For this determination, the well-pleaded complaint rule must be followed. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). The Court examines "the 'well pleaded' allegations of the complaint and ignore[s] potential defenses." *Beneficial Nat'l. Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). A federally created right or immunity must appear "on the face of the complaint", *see Brough v. United Steelworkers of Am., AFL–CIO*, 437 F.2d 748, 749 (1st Cir.1971), and such right or immunity must be an essential element of plaintiff's cause of action. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10–11, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

██ A case may also arise under federal law when the determination of a state law claim is dependent upon an interpretation of a federal law. *Merrell Dow*, 478 U.S. at 808, 106 S.Ct. 3229. If this is the case, however, it must appear that an interpretation of a "substantial, disputed question of federal law" is necessary for the determination of one of plaintiff's well-pleaded state claims. *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841. The "substantial federal question" doctrine has three components: (1) the state-law claim must "necessarily raise a stated federal issue"; (2) the federal issue must be "actually disputed and substantial"; and (3) the exercise of jurisdiction must not disturb the "congressionally approved balance of federal and state judicial responsibilities." *See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 96 (1st Cir.2007) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g. & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)).

Defendants concede that plaintiff's complaint does not arise under federal law, because the HCQIA does not provide for a private federal cause of action. (Docket No. 9.) They do argue, though, that the Court has subject-matter jurisdiction under the "substantial federal question" doctrine. *Id.* The Court disagrees.

The HCQIA is a federal statute enacted in 1986 in response to the crisis in the monitoring of health care professionals.[3]

---

**3.** As the First Circuit has noted, "[A]lthough state licensing boards had long monitored the conduct and competence of their own health care workers, Congress found that '[t]he increasing occurrence of medical malpractice and the need to improve the quality of medical care have become nationwide problems that warrant greater efforts than those that can be undertaken by any individual State.' "

*Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 31 (1st Cir.2002) (citing 42 U.S.C. § 11101(1)). "Finding that incompetent "physicians find it all to[o] easy to move to different hospitals or states and continue their practices in these new locations," Congress mandated the creation of a national database that recorded incidents of malpractice and that was available for all health care

The HCQIA was passed by Congress to "provide incentive and protection for physicians engaging in effective professional peer review." 42 U.S.C. § 11101(5). It was Congress's intention that doctors involved in the peer review process would comply with the reporting requirements established in the HCQIA and that by their compliance, decrease the number of occurrences of medical malpractice. *Addis v. Holy Cross Health Sys. Corp.*, 88 F.3d 482, 485 (7th Cir.1996). Congress understood that the HCQIA would "improve the quality of medical care by encouraging physicians to identify and discipline other physicians who are incompetent or engage in unprofessional behavior." *Wayne v. Genesis Med. Ctr.*, 140 F.3d 1145, 1148 (8th Cir.1998) (citing H.R.Rep. No. 99–903, at 2 (1986), as reprinted in 1986 U.S.C.C.A.N. 6287, 6384.)

■■ Because the HCQIA was enacted for the purpose of protecting patients, not physicians, *see, e.g., Hancock v. Blue Cross–Blue Shield of Kan., Inc.*, 21 F.3d 373, 374–75 (10th Cir.1994), it is well-settled that the HCQIA does not create an explicit or implicit private cause of action for physicians that are subject to a professional peer review. *See, e.g., Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 45 (1st Cir.2002). What the HCQIA does create, however, is a presumptive statutory immunity from damages liability for those performing the professional peer review. 42 U.S.C.

§§ 11111–11112. Thus, if those performing the review fail to follow HCQIA standards, the entity and the persons participating in the peer review will not be immune.[4] *See Singh*, 308 F.3d at 31, 44. In other words, if defendants followed the standards established in the HCQIA while reviewing Dr. Garib's request for privileges, they will be immune from damages. On the other hand, if they did not follow the standards established in the HCQIA, they will not be immune. 42 U.S.C. §§ 11111–11112; *See Singh*, 308 F.3d at 44.

While it is true that the HCQIA might be involved in the final determination of this case, it will be so only because defendants have raised the immunity provisions as an affirmative defense to their liability. (Docket Nos. 9 & 17.) But as it is well known, federal jurisdiction cannot be predicated on an actual or anticipated defense. *Beneficial*, 539 U.S. at 6, 123 S.Ct. 2058 (2003). Thus, whether the Court has jurisdiction depends on whether or not the HCQIA is necessary to prove an element of plaintiff's causes of action. If the HCQIA arises only in the context of defendants' defenses, the Court is without subject-matter jurisdiction. If plaintiff must invoke the HCQIA in order to establish an element of one of his causes of action, however, the Court may have jurisdiction.

■■ Plaintiff's complaint asks for declaratory judgement, a series of restrain-

---

entities to review when screening potential employees." *Id.* (citing H.R.Rep. No. 99–903, at 2, reprinted in 1986 U.S.C.C.A.N. 6384, 6385).

4. The District Court of Puerto Rico has previously deemed that "[T]o benefit from this immunity, 'a professional review action must be taken: (1) in the reasonable belief that the action was in furtherance of quality health care, (2) after a reasonable effort to obtain the facts of the matter, (3) after adequate notice

and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirements of paragraph (3).' " 42 U.S.C. § 11112(a); *Tirado–Menéndez v. Hospital Interamericano de Medicina Avanzada*, 476 F.Supp.2d 79, 82 (D.P.R.2007).

ing orders, and damages, alleging: (1) that some of the actions taken by defendants are contrary to their Bylaws (Docket No. 15–3 ¶¶ 30, 45–46, 52–53); (2) that their Bylaws are "illegal" (Docket No. 15–3 ¶¶ 48, 61, 63–64); (3) that plaintiff's rights have been violated because of such actions (Docket No. 15–3 ¶¶ 72–73, 75); and (4) that plaintiff has suffered damages as a result of those actions. (Docket No. 15–3 ¶ 80.) An interpretation of the HCQIA is not needed to establish any of these elements. The HCQIA will only play a role in this case as a defense, when determining whether defendants have immunity from liability.

Because plaintiff's complaint does not allege a federal question on its face because the HCQIA does not provide for a private cause of action, and because there is no substantial federal question to decide, the Court finds that it lacks subject matter jurisdiction over this suit and remands it to Puerto Rico's Court of First Instance, San Juan Superior Division, Civil Action No. KPE10–1201 (904).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's motion for remand. (Docket No. 6.) Plaintiff's complaint is **REMANDED** to the Puerto Rico's Court of First Instance, San Juan Superior Division.

Judgment shall be entered accordingly.

Plaintiff's petition for a temporary restraining order is **MOOT** and plaintiff's request for sanctions is **DENIED.**

**IT IS SO ORDERED.**