**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 07-1957**

―――――――――

BUNKER HOLDINGS, LTD.,

          Intervenor/Plaintiff - Appellant,

     and

TRITON MARINE FUELS LTD., S.A.; BRIDGE OIL, LTD.,

          Plaintiffs,

     and

CRESCENT TOWING AND SALVAGE COMPANY, INC.; COOPER/T. SMITH
MOORING; CANTON PORT SERVICES LLC; ISS MARINE SERVICES,
INC., d/b/a Inchcape Shipping Services,

          Intervenors/Plaintiffs,

     v.

GREEN PACIFIC A/S,

          Defendant – Appellee,

     and

M/V PACIFIC CHUKOTKA, apparel, freights, etc., IMO No.
8800224; EMERALD REEFER LINES, LTD.; EMERALD REEFER LINES,
LLC; INTERTRANSPORT CO., LLC; INTERTRANSPORT, LTD.,

          Defendants,

     and

THE MASTER OF THE M/V PACIFIC CHUKOTKA,

          Garnishee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    J. Frederick Motz, District Judge.
(1:06-cv-03346-JFM)

Argued:  May 12, 2009              Decided:  August 28, 2009

Before SHEDD, Circuit Judge, Joseph F. ANDERSON, Jr., United
States District Judge for the District of South Carolina,
sitting by designation, and Martin K. REIDINGER, United States
District Judge for the Western District of North Carolina,
sitting by designation.

Affirmed by unpublished per curiam opinion.

John Stephen Simms, SIMMS & SHOWERS, LLP, Baltimore, Maryland,
for Appellant. David W. Skeen, WRIGHT, CONSTABLE & SKEEN, LLP,
Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this maritime action, Bunker Holdings, Ltd. ("Bunker Holdings") asserts in personam claims of conversion and unjust enrichment against Green Pacific A/S ("Green Pacific"), arising out of the consumption of fuel oil by Green Pacific's vessel, the M/V PACIFIC CHUKOTKA ("PACIFIC CHUKOTKA" or "Vessel"). The district court granted Green Pacific summary judgment, holding that the contracts between Bunker Holdings and the Vessel's charterer, pursuant to which Bunker Holdings supplied the fuel bunkers to the Vessel, called for the application of Greek law, and that Bunker Holdings had failed to show that Greek law recognized such claims.

Bunker Holdings appeals, arguing that the Greek choice-of-law provisions in the supply contracts with the Vessel's charterer do not control Bunker Holdings' extra-contractual claims against the Vessel's owner, Green Pacific. Bunker Holdings further contends that had the district court applied traditional maritime choice-of-law rules to Bunker Holdings' claims, the district court would have found that Russian law governs this action. For the following reasons, we affirm.

I.

Bunker Holdings is a Cypriot corporation that sells marine fuel ("bunkers"). Green Pacific is a Norwegian corporation and,

3

at all times relevant to this litigation, was the owner of the Vessel.

In December 2005, Green Pacific leased the Vessel under a bareboat charter[1] to Intertransport Company LLC ("Intertransport"), a Russian company with its principal place of business in Vladivostok, Russia.  On September 28, 2006, Intertransport sent an e-mail to Bunker Holdings requesting a quote for a purchase of bunkers.  On September 29, 2006, Bunker Holdings replied by e-mail ("Bunker Confirmation"), confirming Intertransport's order.  The Bunker Confirmation contains a choice-of-law provision, which states as follows:

> BUYERS ACCEPT AND AGREE THAT THIS AGREEMENT, FOR ANY DISPUTES ARISING HEREIN IS SUBJECT TO GREEK LAW AND THE EXCLUSIVE JURISDICTION OF THE COURTS OF PIRAEUS.

(J.A. 193).  The bunker transaction was also subject to Bunker Holdings' "Standard Terms and Conditions for Sale of Marine Bunker Fuels, Lubricants and Other Products," which provides, in pertinent part, as follows:

> The Agreement is subject to the law and jurisdiction of the courts of Greece.  So whoever that nothing in this clause shall, in the event of a breach of the Agreement by the Customer, preclude the Company from taking any such actions as it shall in its absolute

---

[1] Under a bareboat charter, also known as a demise charter, "the shipowner surrenders possession and control of the vessel to the charterer, who then succeeds to many of the shipowner's rights and obligations."  Black's Law Dictionary 250 (8th ed. 2004).

4

> discretion consider it necessary to enforce, safeguard or secure its rights under the Agreement in any Court or tribunal or any state or country.

(J.A. 206). On October 5, 2006, Bunker Holdings confirmed delivery of the bunkers to the Vessel in St. Petersburg, Russia. Thereafter, Bunker Holdings sent an invoice to Intertransport requesting payment for the bunkers by December 4, 2006.

On November 16, 2006, similar e-mail communications between Bunker Holdings and Intertransport confirmed a second sale of bunkers to be delivered to the Vessel in St. Petersburg, Russia. The confirmation terms were identical to the terms of the October 5, 2006 transaction, including the Greek choice-of-law clause. This second transaction was also governed by the Standard Terms and Conditions, which included a Greek choice-of-law provision. On November 25, 2006 Bunker Holdings confirmed delivery of this second set of bunkers to the Vessel in St. Petersburg, Russia, and an invoice was sent to Intertransport requesting payment for the fuel. Intertransport never paid for either bunker delivery.

In December 2006, the PACIFIC CHUKOTKA was arrested in the Port of Baltimore pursuant to a complaint filed by another fuel supplier, Triton Marine Fuels Ltd. Bunker Holdings intervened in that action to assert claims against the charterer and sub-charterer of the Vessel for their failure to pay for the bunkers. Bunker Holdings subsequently amended its complaint to

assert <u>in personam</u> claims against Green Pacific as the Vessel's owner. This amended complaint, without reference to the applicable law, asserts <u>in personam</u> claims of conversion and unjust enrichment against Green Pacific arising out of the consumption of the fuel oil by the Vessel between October 5, 2006 and the date of the Vessel's arrest. As part of its <u>in personam</u> action, Bunker Holdings attached the Vessel as property of Green Pacific, pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

Green Pacific moved to vacate Bunker Holdings' attachment and to dismiss Bunker Holdings' <u>in personam</u> claims under federal maritime law.[2] In response to Green Pacific's motion to vacate, Bunker Holdings stated for the first time its position that its claims were made under Russian maritime law, and it submitted the affidavits of three Russian lawyers in support of its contention that Russian maritime law allows recovery on these facts under a theory of unjust enrichment. Following an expedited hearing,[3] the district court denied the motion to

---

[2] In its motion to vacate, Green Pacific noted in passing that the Standard Terms and Conditions contained a Greek choice-of-law provision, but denied the application of such provision to the present claims, noting that this agreement was only between Bunker Holdings and Intertransport, not Green Pacific.

[3] In its brief, Green Pacific discusses several arguments advanced by counsel as well as oral findings made by the
(Continued)

6

vacate, and Green Pacific posted security to obtain the release of the Vessel.

Thereafter, Green Pacific filed a motion for summary judgment, arguing that Bunker Holdings was bound by its choice of Greek law and that in the absence of any support for liability under Greek law, Bunker Holdings' claims based on Russian law must be dismissed. In opposing Green Pacific's motion, Bunker Holdings again relied upon Russian maritime law in support of its claims.

The district court entered an order granting Green Pacific's motion for summary judgment. In a letter to counsel[4], the district court explained its ruling, holding that the contractual choice of Greek law was enforceable and that Bunker Holdings had failed to show the viability of its claims under Greek law.

---

district court during these emergency proceedings. No transcript of this proceeding, however, is contained in the record on appeal.

[4] The district court's order does not set out the reasons for its ruling. Those reasons are set out only in the informal letter to counsel, which has been included in the record. (J.A. 401-05).

7

II.

We review the district court's grant of summary judgment _de novo_, applying the same standards as those applied by the district court. Catawba Indian Tribe of S.C. v. City of Rock Hill, 501 F.3d 368, 370-71 (4th Cir. 2007). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

III.

A.

We begin our analysis by determining whether the choice-of-law provisions set forth in the contracts between Bunker Holdings and Intertransport are enforceable. In determining the enforceability of a choice-of-law provision, we look to principles of federal maritime law. See generally M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972); Richards v. Lloyd's of London, 135 F.3d 1289, 1292-93 (9th Cir. 1998) (en banc); but see Trans-Tec Asia v. M/V HARMONY CONTAINER, 518 F.3d 1120, 1124 (9th Cir.) (applying traditional choice-of-law principles to determine which country's law determines the validity of choice-of-law provision in contract), cert. denied, 129 S. Ct. 628 (2008).

It is well-settled under United States law that absent a compelling reason of public policy, a freely negotiated choice-of-law clause in a maritime contract should be enforced. See Bremen, 407 U.S. at 12-13 ("There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect."); Lauritzen v. Larsen, 345 U.S. 571, 588-89 (1953) ("Except as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply."); Bominflot, Inc. v. M/V HENRICH S, 465 F.3d 144, 148 (4th Cir. 2006) ("Because no 'other law' is specified on the face of the contract, and public policy does not counsel against it, we will respect the parties' intentions and apply English law."); Hawkspere Shipping Co. v. Intamex, S.A., 330 F.3d 225, 233 (4th Cir. 2003) ("Where the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice.") (quoting Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1297 (9th Cir. 1997)).

In the present case, Bunker Holdings drafted the terms and conditions which governed the bunkers transactions, and its deliberate inclusion of a Greek choice-of-law provision both in the Bunker Confirmation and the Standard Terms and Conditions reflects Bunker Holdings' intent that the parties' transactions

9

would be governed by Greek law. Bunker Holdings has not demonstrated any compelling public policy that would prevent the enforceability of the choice-of-law provisions in the supply contracts, nor has Bunker Holdings shown that any fundamental unfairness would result from enforcing the provisions. Accordingly, we conclude that the district court was correct in holding that the Greek choice-of-law provisions are enforceable in this case.

B.

Having determined that the choice-of-law provisions are enforceable, questions still remain as to whether Bunker Holdings' in personam claims of conversion and unjust enrichment against Green Pacific fall within the scope of these provisions, and whether such claims are viable under Greek law.

Bunker Holdings contends that because Green Pacific was not a party to the agreements, the choice-of-law provisions contained therein are not applicable to its in personam claims asserted against Green Pacific. The Bunker Confirmation, however, indicates that Bunker Holdings intended for Green Pacific to be a party to the transaction, as Bunker Holdings identified the "buyer" of the bunkers as the "M/V PACIFIC CHUKOTKA *AND JOINTLY AND SEVERALLY OWNERS*/MANAGING OWNERS/OPERATORS MANAGERS/DISPONENT OWNERS/CHARTERS AND VESSEL

10

IN REM AND INTERTRANSPORT CO., LLC." (J.A. 197) (emphasis added). The Bunker Confirmation further provides that "MERE RECEIPT OF THIS CONFIRMATION SIGNIFIES ACCEPTANCE OF RESPONSIBILITY FOR PAYMENT OF OUR BUNKER INVOICE BY EACH AND ALL OF THEM." (Id.). Having sought to bind Green Pacific to the supply contract, Bunker Holdings cannot now be heard to claim that the provisions of that contract should not be enforced as to its claims against Green Pacific. Bunker Holdings' argument, therefore, must be rejected.

Bunker Holdings further contends that even if these choice-of-law provisions are enforceable with respect to Green Pacific, the provisions do not encompass Bunker Holdings' extra-contractual claims. The scope of the choice-of-law provisions, however, being a matter of contract interpretation, must be determined by the law of the state chosen by the parties in the contract. See Milanovich v. Costa Crociere, S.p.A., 954 F.2d 763, 767 (D.C. Cir. 1992) ("If the choice-of-law provision is enforceable, we will use the law that it selects to evaluate the enforceability of the remainder of the contract terms."); Siegelman v. Cunard White Star, 221 F.2d 189, 193 (2d Cir. 1955) (examining United States law to determine enforceability of English choice-of-law provision, then applying English law to interpret contract provision limiting the time for suit); Jansson v. Swedish Am. Line Ltd., 185 F.2d 212, 218 (1st Cir.

11

1950) ("when the parties contract with the law of some particular jurisdiction in view, the law of that jurisdiction will be applicable in determining the interpretation and validity of the contract"); <u>Odin Shipping Ltd. v. Drive Ocean V MV</u>, No. 98-56794, 2000 WL 576436, at *1 (9th Cir. May 11, 2000) (applying law selected in choice-of-law provision to determine whether asserted tort claims arise within the scope of said provision). Accordingly, whether the choice-of-law provisions encompass the non-contractual claims asserted by Bunker Holdings against Green Pacific is an issue that must be determined under Greek law.

On this point, however, Bunker Holdings' argument must fail. Bunker Holdings has presented nothing to establish what the relevant Greek law is or whether it would serve to preclude the application of the parties' contractual choice-of-law to Bunker Holdings' extra-contractual claims. It was due to Bunker Holdings' lack of proof on this issue that the district court granted summary judgment to Green Pacific. On appeal, Bunker Holdings does not challenge the district court's conclusion in this regard.[5] Having failed to address this issue in its opening

---

[5]In its opening appellate brief, Bunker Holdings maintains that the district court erred in failing to conduct a <u>Lauritzen</u> analysis to determine the appropriate law to apply to Bunker Holdings' claims against Green Pacific. In a footnote, Bunker Holdings contends that the district court "compounded its error
(Continued)

appellate brief, we consider Bunker Holdings to have abandoned this issue on appeal, and we therefore will not further consider it.  See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

IV.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

---

even further" by failing to determine "how, if at all, the supposedly controlling Greek law would affect Bunker Holdings' claims (or even, what the supposedly controlling Greek law, was)."  (J.A. 13 n.5).  This passing reference in a footnote hardly satisfies the appellant's obligation to set forth its "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A).