# United States Court of Appeals
## For the First Circuit

No. 21-1648

GREAT LAKES INSURANCE SE,

Plaintiff, Appellee,

v.

MARTIN ANDERSSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Montecalvo, Circuit Judges.

Michelle M. Niemeyer, with whom Michelle M. Niemeyer, P.A.,
Harvey B. Heafitz, and Davagian Grillo & Semple LLP were on brief,
for appellant.
Michael I. Goldman, with whom Goldman & Hellman was on brief,
for appellee.

April 19, 2023

**MONTECALVO, Circuit Judge**.  This maritime insurance case from Massachusetts arises on interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(3) from the district court's grant of judgment on the pleadings in favor of the plaintiff-insurer, Great Lakes Insurance SE (GLI).  The defendant, Martin Andersson, asserted that GLI engaged in unfair claim settlement practices in violation of Massachusetts General Laws chapters 176D and 93A.  The district court ruled that Andersson's claim was barred by the choice-of-law provision of the marine insurance policy he purchased from GLI. For the reasons that follow, we conclude that the choice-of-law provision is ambiguous as to what law applies to the statutorily based claim that is at issue.  Consistent with the applicable principles of interpretation we construe this ambiguity against the drafter -- GLI -- and conclude that Andersson's Massachusetts state law claim is not subject to the choice-of-law provision. Accordingly, we reverse.

## I. Background

As this question comes to us on appeal from a motion for judgment on the pleadings, "[w]e view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences in his favor."  Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007).  These facts may be supplemented by reference to "documents 'fairly incorporated' in the pleadings" and "facts susceptible to judicial notice."

- 2 -

Sevelitte v. Guardian Life Ins. Co. of Am., 55 F.4th 71, 76 (1st Cir. 2022) (citation omitted).

GLI issued an insurance policy to Andersson which provided hull and machinery coverage for his forty-seven-foot catamaran sailing vessel, the Melody. The effective dates of the policy were from December 21, 2018, to December 21, 2019. The policy included the following choice-of-law provision, (which is directly at issue in this case):

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.[1]

---

[1] We are aware that this choice-of-law provision is currently before the Supreme Court in Great Lakes Ins. SE v. Raiders Retreat Realty Co., 47 F.4th 225 (3d Cir. 2022), cert. granted, __ S. Ct. __, 2023 WL 2357327 (U.S. March 6, 2023) (No. 22-500). The Third Circuit held that prior to applying New York law the district court should have considered whether applying New York law would contravene the forum state's "strong public policy," including protecting insureds from "bad faith and unfair trade practices by insurance companies." Raiders Retreat Realty Co., 47 F.4th at 230-33. The Supreme Court granted limited review as to whether "[u]nder federal admiralty law, can a choice of law clause in a maritime contract be rendered unenforceable if enforcement is contrary to the 'strong public policy' of the state whose law is displaced?" Raiders Retreat Realty Co., 47 F.4th 225, cert. granted, __ S. Ct. __, 2023 WL 2357327 (U.S. March 6, 2023) (No. 22-500); Petition for Cert. at i, Raiders Retreat Realty Co., 47 F.4th 225 (3d Cir. 2022), cert. granted, __ S. Ct. __, 2023 WL 2357327 (U.S. March 6, 2023) (No. 22-500), 2022 WL 17361673, at *i. This question is not raised by the instant appeal, and we do not delve into public policy here.

- 3 -

On December 16, 2019, the Melody was traveling to the Port of Boca Chica in the Dominican Republic when it struck a breakwater and became stranded. The vessel was severely damaged, and Andersson notified GLI of the incident. GLI began investigating the incident and put Andersson in touch with a marine surveyor. The marine surveyor informed Andersson that the vessel was a "constructive total loss." Thereafter, on December 27, 2019, GLI reserved the right to deny coverage.

Andersson informed GLI that salvage of the vessel would cost $50,000, or, alternatively, Andersson could give title of the vessel and its contents to the salvor in exchange for the salvor's services. On January 2, 2020, the marine surveyor determined that the Melody "ha[d] very little residual value and a high salvage cost," and so GLI did not object to Andersson "transferring title to the vessel in exchange for salvage." Accordingly, Andersson and the salvor executed a contract requiring the salvor to remove the Melody from the breakwater, and title of the Melody was transferred to the salvor. The salvor agreed that it would retain the vessel and provide access to it upon request. In a January 16, 2020 letter, Andersson informed GLI that the right of access to the vessel would expire on February 10, 2020. Andersson also told GLI that the vessel's global positioning system (GPS) device was taken by the surveyor on GLI's behalf.

On January 28, 2020, Andersson asked GLI for confirmation that it had received his January 16th letter. GLI confirmed receipt and indicated that "[w]e have asked our surveyors for comments." On February 19, 2020, Andersson inquired when the GPS device would be returned to him, to which GLI responded that Andersson should contact the surveyor directly. Andersson did so, and the surveyor informed him that the GPS device was not received from the salvor. The surveyor told Andersson that "[b]eyond the meeting you and I had with the salvors on the beach when I was there, we have had no further involvement with salvors. Once we reported to [GLI,] our file was closed."

On February 27, 2020, GLI brought a declaratory judgment action to determine whether there was coverage under the policy. GLI alleged that coverage was unavailable because Andersson breached the policy by 1) failing to keep the Melody in seaworthy condition; and 2) travelling outside the navigational limits that were permitted under the policy.

Andersson filed an answer and counterclaim alleging, inter alia, a statutorily based claim for violations of chapter 176D, section 3(9) and chapter 93A, section 9(3A) of the Massachusetts General Laws, which -- taken together -- prohibit unfair or deceptive acts or practices in the business of insurance. Specifically, chapeter 176D, section 3(9) "regulates the insurance business and identifies 'unfair claim settlement practices.'"

Rawan v. Cont'l Cas. Co., 136 N.E.3d 327, 335 (Mass. 2019). "A violation of . . . c[h.] 176D amounts to an unfair or deceptive act or practice for purposes of claims made under . . . c[h.] 93A." Id.

Andersson alleged that GLI violated chapters 176D and 93A by failing to obtain or inspect the GPS device from the Melody, resulting in loss of access to the GPS device and an incomplete investigation into the course taken by the vessel. Andersson further alleged that GLI "failed to affirm or deny the claim promptly after the surveyor's report was received on or about January 2[nd]" and instead "misrepresented the status of its claims decision . . . so that it could proactively file a declaratory judgment action[.]"

After answering the counterclaim, GLI moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). GLI contended that Andersson's unfair trade and settlement practices claim under Massachusetts law was barred by the policy's choice-of-law provision. Specifically, GLI argued that the policy's choice-of-law provision dictated that any issue not governed by an entrenched rule of federal admiralty law was governed by New York law. Thus, GLI pressed, Andersson's Massachusetts state law claim failed as a matter of law. Andersson's retort was that the choice-of-law provision limited the application of New York law to disputes that concern

- 6 -

interpretation of the policy itself, but not to claims entirely separate and distinct from a breach of the policy (hereinafter, "extracontractual claim(s)"). Thus, Andersson maintained, his Massachusetts state law claim remained viable because it was an extracontractual claim that did not concern disputes about the proper interpretation of the contract.

The district court rejected Andersson's position. It ruled that pursuant to the choice-of-law provision, New York law governed and barred Andersson's Massachusetts counterclaim. The district court reasoned that, in the absence of well-established admiralty law, New York law applied to all claims, including extracontractual claims, arising from and related to performance under the policy. Therefore, because New York law does not provide for a chapters 176D and 93A claim, the district court dismissed Andersson's counterclaim. This timely appeal ensued.[2]

---

[2] Andersson appealed three orders of the district court: 1) an order granting GLI's motion to strike Andersson's jury demand; 2) an order denying Andersson's motion to reconsider the order striking the jury demand; and 3) an order granting GLI's motion for judgment on the pleadings. In response to an order to show cause as to why the challenged orders were not appealable on an interlocutory basis, Andersson notified this court that he would not pursue an appeal of the denial of his motion for reconsideration. Andersson never withdrew his appeal of the order granting GLI's motion to strike his jury demand but failed to brief the issue. As such, this issue is waived for purposes of appeal. See Sonoran Scanners, Inc. v. Perkinelmer, Inc., 585 F.3d 535, 545 n.7 (1st Cir. 2009).

Therefore, the only order properly before this court on appeal is the district court's order granting GLI's motion for judgment on the pleadings because it is an appealable interlocutory order

## II. Analysis

"We review the district court's judgment on the pleadings de novo." Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 42 (1st Cir. 2017). The non-moving party's well-pleaded facts are accepted as true, and all reasonable inferences are drawn in the non-movant's favor. Id. "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" Zipperer, 493 F.3d at 53 (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006)).

From this posture, we consider whether the choice-of-law provision in the policy requires the application of New York law to extracontractual claims arising between the parties outside the scope of federal admiralty law, thereby barring Andersson's Massachusetts state law claim. The parties agreed, in the policy itself, that

> any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

---

pursuant to 28 U.S.C. § 1292(a)(3). That order conclusively determined that GLI is not liable for unfair trade and claim settlement practices under Massachusetts law, and GLI does not dispute the propriety of this appeal. See Doyle v. Huntress, Inc., 419 F.3d 3, 6-7 (1st Cir. 2005).

- 8 -

As an initial matter, Andersson does not contest that the choice-of-law provision is valid and enforceable.[3] He also concedes that entrenched principles of admiralty law would control an extracontractual claim if such precedent existed.

Thus, Andersson's challenge centers on the proper interpretation of the choice-of-law provision when faced with an extracontractual claim that is not governed by entrenched principles of admiralty law. Andersson maintains that the second, disjunctive clause of the choice-of-law provision -- which states that "this insuring agreement is subject to the substantive laws of the State of New York" -- "narrowed the application of New York law to the insuring agreement[,]" and not to extracontractual claims. He thus asserts that his statutory extracontractual claim does not fall within the ambit of the choice-of-law provision.

## A. Andersson's statutorily based counterclaim is extracontractual.

Because Andersson does not dispute that contract-related claims fall within the scope of the choice-of-law provision, the

---

[3] GLI devotes a substantial portion of its brief to the argument that the choice-of-law provision is enforceable pursuant to a two-part test articulated by the Fifth Circuit in Stoot v. Fluor Drilling Servs., Inc., 851 F.2d 1514 (5th Cir. 1988). Even setting aside the fact that Stoot is not binding on this court, GLI's argument is misplaced in this regard because Stoot presupposes that the parties' choice-of-law provision applies to the claims at issue. Whether Andersson's Massachusetts state law claim falls within the scope of the choice-of-law provision is the question at the very heart of this case.

first issue we must resolve is whether Andersson's counterclaim is, in fact, extracontractual. Andersson alleged that GLI, in handling his insurance claim, engaged in unfair or deceptive acts that amounted to unfair claim settlement practices in violation of chapters 176D and 93A.

The conduct prohibited by chapter 176D, such as "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims" or "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information[,]" can be entirely separate and distinct from the breach of an insurance policy. Mass. Gen. Laws ch. 176D, § 3(9)(c), (d). Even if an "insurer eventually pays the claim and honors the contract, its method of conducting the claims settlement process, and the payment strategy it adopts, can implicate liability under c[h.] 176D, and thus under c[h.] 93A." Schwartz v. Travelers Indem. Co., 740 N.E.2d 1039, 1043 (Mass. App. Ct. 2001).

As pleaded, contract violations are not at the core of Andersson's chapters 176D and 93A claim. Andersson never alleges that GLI violated chapter 176D by breaching, or taking actions forbidden by, the contract. See Ne. Data Sys., Inc. v. McDonnell Douglas Comput. Sys. Co., 986 F.2d 607, 609 (1st Cir. 1993) (holding that chapter 93A claims "amount[ed] to embroidered 'breach of contract claims'" where the supporting allegations were

based on actions that broke or were forbidden by the contract). Rather, Andersson's allegations -- taken in the light most favorable to him -- are not duplicative of a breach of contract claim based on the policy. Thus, Andersson's claim is extracontractual.

## B. The plain language of the choice-of-law provision is not broad enough to unambiguously encompass an extracontractual claim.

Having established the nature of Andersson's claim, we must now address the exact scope of the choice-of-law provision. There is no federal maritime rule governing construction of marine insurance contracts, see Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir. 2004), and under New York or Massachusetts law, the relevant rules of contract interpretation are essentially the same.[4]

---

[4] We recognize that courts have taken different approaches to determining the scope of a valid choice-of-law provision. Some courts view the scope of a choice-of-law provision as a matter of contract interpretation subject to the law chosen in the provision. See Bunker Holdings, Ltd. v. Green Pac. A/S, 346 F. App'x 969, 973 (4th Cir. 2009); Odin Shipping Ltd. v. Drive Ocean V MV, 221 F.3d 1348 (9th Cir. 2000) (unpublished table decision). Others determine the scope of the choice-of-law provision pursuant to the laws of the forum state. See Schwan's Sales Enters., Inc. v. SIG Pack, Inc., 476 F.3d 594, 597-98 (8th Cir. 2007); Fin. One Pub. Co. v. Lehman Brothers Special Fin., Inc., 414 F.3d 325, 333 (2d Cir. 2005). This court has not had occasion to undertake this particular analysis beyond noting that "[g]iving effect to [a choice-of-law] provision for the purpose of determining whether it . . . should be given effect obviously would be putting the barge before the tug." DeNicola v. Cunard Line Ltd., 642 F.2d 5, 7 n.2 (1st Cir. 1981). Fortunately, we need not wade into these murky waters any further as there are no differences between applying

We begin with the actual language of the policy and give the words their plain and ordinary meaning. See Jalbert ex rel. F2 Liquidating Tr. v. Zurich Servs. Corp., 953 F.3d 143, 150 (1st Cir. 2020) (applying Massachusetts law); Ali v. Fed. Ins. Co., 719 F.3d 83, 90 (2d Cir. 2013) (applying New York law). The choice-of-law provision first provides that "any dispute arising hereunder" is subject to entrenched admiralty principles. Andersson's chapters 176D and 93A claim is a "dispute arising hereunder," and there is no "well established, entrenched principles and precedent of substantive United States Federal Admiralty law" governing unfair trade and claim settlement practices. Absent admiralty precedent, the choice-of-law provision does not specifically dictate what law applies to a "dispute arising hereunder," but instead proceeds to state that "this insuring agreement is subject to the substantive laws of New York."

This differential in wording employed by GLI in the choice-of-law provision -- "any dispute arising hereunder" versus "this insuring agreement" -- creates ambiguity because it is subject to more than one reasonable interpretation. See Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009) (applying Massachusetts law); Aronstein v. Mass. Mut. Life Ins. Co., 15 F.4th

New York or Massachusetts law to the scope determination, and the parties agree as much.

- 12 -

527, 534 (1st Cir. 2021) (applying New York law). Indeed, two distinct classes of claims are arguably contemplated in the choice-of-law provision. The first clause encompasses "any dispute arising hereunder," which could include contract-related and extracontractual claims. But, the second clause is limited to "this insuring agreement," which could be limited to contract-related claims. Only these contract-related claims are specifically subjected to New York law. It is entirely unclear whether extracontractual claims -- even if they may be said to "arise[] hereunder" -- are also subject to New York law.

Although GLI urges us to ignore the differential wording, a canon of construction refutes this attempt. "Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Valley Forge Ins. Co. v. Field, 670 F.3d 93, 99 (1st Cir. 2012) (quoting Bos. Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 304 (Mass. 2009)); see Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc., 92 N.E.3d 743, 748 (N.Y. 2017) ("[A] contract must be construed in a manner which gives effect to each and every part, so as not to render any provision 'meaningless or without force or effect.'" (quoting Ronnen v. Ajax Elec. Motor Corp., 671 N.E.2d 534, 536 (N.Y. 1996))). The term "this insuring agreement" should be given meaning and effect apart from the term

"any dispute arising hereunder."  Using both terms makes the scope of the choice-of-law provision ambiguous.

## C. Any ambiguity in the policy must be construed in favor of Andersson.

Because the plain language of the choice-of-law provision is not broad enough to unambiguously encompass extracontractual claims, "any ambiguities must be construed in favor of the insured."  Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co., 734 F.3d 51, 55 (1st Cir. 2013) (applying Massachusetts law); see J.P. Morgan Sec. Inc. v. Vigilant Ins. Co., 183 N.E.3d 443, 447 (N.Y. 2021).  While both Massachusetts and New York law recognize this rule of construction, "[u]nder New York law, courts must first examine extrinsic evidence of the parties' intent before turning to doctrinal presumptions."  Aronstein, 15 F.4th at 534 (applying New York law).  However, "if the extrinsic evidence does not yield a conclusive answer as to the parties' intent, a court may apply other rules of contract construction[.]"  Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 43 (2d Cir. 2006) (cleaned up) (applying New York law).

Here, extrinsic evidence of the parties' intent will not aid our analysis of the policy's boilerplate choice-of-law provision.  See Kolbe v. BAC Home Loans Servicing, LP, 738 F.3d 432, 440 (1st Cir. 2013) ("Because uniform contracts are

interpreted uniformly across cases whenever it is reasonable to do so, extrinsic evidence about what a particular party intended or expected when signing the contract is generally irrelevant.") Thus, we proceed directly to the rules of contract construction. See Sharon Steel Corp. v. Chase Manhattan Bank, N.A., 691 F.2d 1039, 1048 (2d Cir. 1982) ("There are no adjudicative facts relating to the parties to the litigation for a jury to find[,] and the meaning of [the] boilerplate provision[] is, therefore, a matter of law rather than fact."). When, as here, there are "competing plausible interpretations of the insurance policy 'doubts as to the intended meaning of the words must be resolved against the insurance company that employed them.'" Performance Trans., Inc. v. Gen. Star Indem. Co., 983 F.3d 20, 28 (1st Cir. 2020) (quoting Surabian Realty Co. v. NGM Ins. Co., 971 N.E.2d 268, 271 (Mass. 2012)); see Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co., 71 N.E.3d 556, 560 (N.Y. 2017) ("Of course, where the policy may be reasonably interpreted in two conflicting manners, its terms are ambiguous, and any ambiguity must be construed in favor of the insured and against the insurer." (cleaned up)). Doing so leads to the inescapable conclusion that only contract-related claims are subject to the substantive laws of New York. Extracontractual claims do not fall within the scope of the second clause of the choice-of-law provision.

Having already determined that Andersson's chapters 176D and 93A claim, as pleaded, is extracontractual and forms a cause of action independent from the insuring agreement, it does not fall within the scope of the choice-of-law provision.

### III. Conclusion

For the reasons stated above, the judgment of the district court is reversed.